NO. 07-08-0347-CV

                                                   IN
THE COURT OF APPEALS

                                       FOR
THE SEVENTH DISTRICT OF TEXAS

                                                                 AT
AMARILLO

                                                                      PANEL
B

                                                           FEBRUARY
17, 2010           ______________________________

 

                                          JAMES RILEY DAVIS, a/k/a J.R. DAVIS,

                                                                                                            Appellant

                                                                             v.

 

                                                            RONALD JORDAN, 

                                                                                                            Appellee

_______________________________

                         FROM
THE 121ST DISTRICT COURT OF TERRY COUNTY;

                                 NO.
17194; HON. KELLY G. MOORE, PRESIDING

                                            ______________________________

                                                                       Opinion           ______________________________

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

            The cause before us involves
allegations of over-spraying a herbicide onto a
neighboring farmer’s watermelon crop. 
James Riley Davis (Davis) alleged that Ronald Jordan (Jordan) did just
that when he used his tractor to apply the herbicide to his cotton crop.  Davis’ property adjoined that of Jordan, and
the contamination was allegedly caused by Jordan spraying the chemical during
windy conditions.  The jury denied Davis’
claims of negligence; so, he appealed. 
The issues we are asked to resolve implicate the trial court’s jury
instructions (or lack thereof), evidentiary rulings, and the sufficiency of the
evidence.  We affirm.  

Issue One - Negligence Per Se

            Davis initially asserts
that the trial court erred in refusing to instruct the jury on negligence per
se.  He was allegedly entitled to the
instruction because Jordan’s conduct violated §7.71 of Title 4 of the Texas
Administrative Code.   We overrule the
issue.   

            Section 7.71 of Title 4
states that “[i]t shall be a violation for any person to use or cause to be
used a pesticide in a manner inconsistent with its label or labeling.” 4 T.A.C. §7.71 (2009). 
As can be seen, §7.71 applies to pesticides; however, for purposes of
this case we assume arguendo that the
herbicide used by Jordan fell within the ambit of a pesticide.  Furthermore, the mandatory nature of the
regulation allegedly rendered its violation an instance of negligence per se.  


            Negligence
per se is a tort concept through
which the courts adopt a legislatively imposed standard of conduct as defining
the conduct of a reasonably prudent man. 
Carter v.
William Sommerville & Son, Inc., 584 S.W.2d 274, 278 (Tex. 1979); Borden, Inc. v. Price, 939 S.W.2d 247,
250 (Tex. App.–Amarillo 1979, writ denied).  Implicit within it is the idea that by
declaring what the public must do or refrain from doing, the
legislature has effectively characterized the commission of the act as conduct
which a reasonably prudent person would not do.[1]  Borden, Inc. v. Price, 939 S.W.2d at 250; see 3 F. Harper, F. James & O. Gray, The Law of Torts § 17.6 at 621 (1986).  In other words, a particular act must be
involved which the legislature prohibited, and in prohibiting the act, it can
be said to have fixed a standard of reasonable care.  Missouri Pacific R.R. Co. v.
American Statesman, 552 S.W.2d 99, 103 (Tex. 1977).  

By so
prohibiting it, the legislature obviated the need to ask a jury to pass upon
the actor's prudence.  Borden, Inc. v. Price, \\7TH-TAMES\research\buttonTFLink?_m=8b257740616d3233b694bcfc19df4586&_xfercite=<cite
cc="USA"><![CDATA[939 S.W.2d 247]]><\cite>&_butType=3&_butStat=2&_butNum=29&_butInline=1&_butinfo=<cite
cc="USA"><![CDATA[119 \\7TH-TAMES\research\buttonTFLink?_m=8b257740616d3233b694bcfc19df4586&_xfercite=<cite
cc="USA"><![CDATA[939 S.W.2d
247]]><\cite>&_butType=3&_butStat=2&_butNum=30&_butInline=1&_butinfo=<cite
cc="USA"><![CDATA[129 939 S.W.2d at 250.   Instead, the trial court merely has the factfinder
decide if the tortfeasor committed the act proscribed by the statute and if the
act proximately caused injury.  Moughon v. Wolf, 576 S.W.2d 603, 604, nn.2-3 (Tex. 1978); Air Prods. & Chems. v. Odfjell Seachem A/S, No. 01-08-0591-CV, 2009 Tex.
App. Lexis 6853 (Tex. App.–Houston
[1st Dist.] August 27, 2009, no pet.); Borden, Inc. v Price, 939 S.W.2d at 250.  So, if violation of the duty imposed by a
statute is dependent upon a jury determining if the act was unreasonable or
imprudent, then the statute cannot be one giving rise to negligence per se. 
Borden, Inc. v.
Price, 939 S.W.2d at 250; Cudworth v.
South Texas Paisano Const. Co., 705 S.W.2d 315, 317
(Tex. Civ. App.–San Antonio 1986, writ ref'd n.r.e.).  

            In the foregoing guidelines we stumble upon the obstacle
preventing us from accepting Davis’ contention. 
The obstacle involves the entity imposing the particular restriction that
Jordan allegedly breached.  The record
does not indicate that it was either the Texas Legislature or the Agriculture
Commission.  Rather, it seems it was the private
entity manufacturing or distributing the herbicide in question.  That is, Jordan was sued for purportedly
spraying a herbicide via an improper manner or under
improper conditions which allowed it to drift onto Davis’ watermelon crop.  Yet, §7.71 of the Administrative Code did and
does not itself address or explain the manner or means of applying the
product.  Instead, it merely made it a
“violation” to use a pesticide in a “manner inconsistent with its label or
labeling.”  And, though a use
inconsistent with the labeling encompasses “applications at sites, rates,
concentrations, intervals or under conditions not specified in the labeled
directions,” id., the latter itself
does not specify any particular rate, site, concentration, interval or
condition.  Those tasks were apparently
left to the discretion of the manufacturer or distributor of the product, i.e. Cheminova A/S of Denmark or
Cheminova, Inc. of New Jersey.  That is
problematic for if we were to conclude that deviating from the label’s
directions and restrictions constituted negligence per se we would be effectively authorizing a private (and in this
case foreign) corporation to create Texas governmental policy regarding the
pertinent standard of care.  

            Again,
negligence per se contemplates that
the legislature, or possibly an administrative agency,
specify the conduct which is to be prohibited.  Missouri
Pacific R.R. Co. v. American Statesman, supra.  In so prohibiting the act, it can then be
said that the legislature, or possibly an administrative agency, has exercised
its judgment in fixing a pertinent, statewide standard of reasonable care
regulating its citizenry.  Id. 
But, that is not the case here, or at least Davis has not shown
otherwise.  Adopting appellant’s argument
is tantamount to acquiescing in the delegation of that governmental authority
to Cheminova since it apparently was free to specify the contents of its label.

            The wording adopted by
Cheminova in its label is also of concern. 
As described in Borden, if the
verbiage is conditional or otherwise fails to impose an absolute restriction,
the prohibition cannot be the fodder of negligence per se.  Borden, Inc. v. Price, 939 S.W.2d at 250-51(holding that because
the traffic regulation allowed the act if it could be done safely, the
prohibition was conditional and not the basis for negligence per se). 
Here, Cheminova wrote “avoid” in its label.  Assuming that “avoid” connotes an absolute
prohibition, we have no idea of whether the company selected the word with the intent
to impose a statewide standard of care.  
More importantly, if the selection of a label’s wording lies within the
discretion of the chemical’s distributor or manufacturer (again, something that
Davis did not address) it may well be that some other manufacturer of an
identical product could utilize different wording that has the same connotation
but that is less than absolute.   For
instance, company X may choose to say something like “do not spray in windy
conditions unless it can be done safely to avoid damage to neighboring
plants.”   That verbiage is more akin to
the language involved in Borden and,
consequently, unlikely to create an absolute, uniform standard of care.  But, both it and the wording on Cheminova’s
label say basically the same thing, “you shouldn’t spray it on plants that you
don’t want to kill.”  So, depending upon
whether you 








bought the weed killer from Cheminova
or from company X, the user’s potential liability could be assessed under
different legal standards.  The risk of
such potential variance is unacceptable.   
 

            Simply
put, the circumstances at bar (as they appear in this particular record) do not
fit within the legal framework of negligence per se.  Thus, we cannot say
that the trial court abused its discretion in refusing to instruct the jury on
the topic.  See Shupe v. Lingafelter,
192 S.W.3d 577, 579 (Tex. 2006) (holding that a trial court does not err when
refusing to submit particular jury instructions unless it abuses its
discretion).        

            Issue Two – Exclusion of Administrative
Order, Findings and Notice

            Next, Davis contends that the trial court erred in
excluding from evidence a notice of violation, findings, and an order issued by
the Texas Agriculture Commission.  The
data allegedly was relevant and within an exception to the hearsay rule.  We overrule the issue.

            That
the evidence was subject to exclusion under Texas Rule of Evidence 403 was one
of three grounds proffered by Jordan to prevent its admission.  Furthermore, the trial court did not state on
what grounds it relied in ruling as it did. 
This is of import because Davis says nothing of Rule 403 and why its
potential application was unwarranted.[2]  Thus, he did not carry his appellate burden
of showing that the trial court erred. 

            Additionally, a closure letter states that the
Commission’s investigation “indicate[d] that a violation of Texas pesticide
laws may have caused or contributed
to the effects which” Davis experienced. 
(Emphasis added).  Yet, the
pertinent evidentiary or legal standard applied by the investigators to arrive
at this conclusion or opine about the nexus between the violation and results
went unmentioned.  Whether that standard
was comparable to the one applicable in a civil case like that at bar (i.e. preponderance of the evidence) also
went unmentioned.  Indeed, by their using
the word “may” one could reasonably argue that the investigators were not
applying the “but for” test used to assess causation in negligence cases.  Thus, it would have been within a reasonable
jurist’s discretion to exclude the notice due to its potential to confuse the
jurors about whether a legitimate nexus existed between the misconduct and any
ensuing damage purportedly suffered by Davis. 


            Finally, we note that per the
findings alluded to by Davis and found in the Commission’s order, the latter
arose from a settlement between Jordan and the Commission.  Because evidence of settlement agreements is
inadmissible under Texas Rule of Evidence 408, it was well within the trial
court’s discretion to exclude the data.   


Issue Three – Instruction on
Act of God

            Davis
next contends that the trial court erred in submitting to the jury an instruction
on act of God.  He believed this so
because there was no evidence that the act of God in question (i.e. 50 mph winds, the lack of humidity,
and sandblasting caused by high winds) was the sole cause of the crop’s
demise.  We overrule the issue.        Davis’ contention is belied by testimony
that the watermelon plants were dried and dying before the Roundup could have affected
them and that they had recently experienced “severe wind and sand damage” due
to a “severe wind and sand storm.”  So
too was there testimony not only that the nominal amount of Roundup found on
the plants tested was insufficient to kill them but also that the wind
direction at the time of application could not have led to the drift in
question.  See McWilliams v. Masterson, 112 S.W.3d 314, 320 (Tex.
App.–Amarillo 2003, pet. denied) (stating that one is not responsible for an act
of God and such consists of an event occasioned exclusively by the violence of
nature). This is some evidence supporting the trial court’s decision to submit
the instruction.  Thus, it did not abuse
its discretion in doing so.  See Castro v. U.S. Natural Resources, Inc., 880
S.W.2d 62, 64 (Tex. App.–San Antonio 1994, pet. denied) (stating that a trial
court is obligated to submit a defensive instruction if some evidence from any
source supports its submission).

Issue Four – Admission of
Expert Testimony

            Next, Davis argues that the trial court erred in
admitting the expert testimony of Dr. Kreig. 
The latter, allegedly, was not qualified to talk about watermelons, and the experiment or test he described
undertaking purportedly was unreliable. 
We overrule the issue.  

            Regarding Davis’ complaint about the admissibility of
Kreig’s experiment, we conclude that the issue was not preserved.  This is so because he presented this
particular complaint via a motion in limine. 
Yet, it has long been held that one does not preserve evidentiary
objections via a motion in limine. Kaufman v. Commission for Lawyer Discipline, 197 S.W.3d 867, 873
(Tex. App.–Corpus Christi 2006, pet. denied).  Furthermore, when Kreig’s reports (i.e. the original and its supplement
describing the experiment and findings arising therefrom) were tendered to the
trial court, Davis apparently stipulated to their admission.  That is, he replied, “agreed
and stipulated.”    After being told this,
the trial court observed that the “reports are admitted without objection . . . .” 
(Emphasis added).  Given these
circumstances, we conclude that any complaint regarding the reliability of the
experiment and its findings was not preserved, and Davis neither argues
otherwise nor proposes any exception to the rule requiring preservation of
error.    

     

            As for the objection regarding Krieg’s qualifications, we
assume arguendo that the matter was
preserved and well-founded.  Nonetheless,
his report was admitted into evidence without objection.  Thus, the jury was free to consider it
irrespective of whether its author was a qualified expert, and because of that
we cannot but find the proposed error to be harmless.  In other words, it is rather incongruent to
say that the jury should not have been able to hear Kreig’s oral comments about
his experiment and findings, but it was free to read them via his report.  In either situation, they were before the
jury.

Issue Five – Sufficiency of the Evidence

            Finally,
Davis attacks the factual sufficiency of the evidence.  That is, he contends that the jury’s verdict
rejecting his negligence claim was “against the great weight and preponderance
of the evidence.”  We overrule the issue
for it was not preserved.  Davis omitted
it from a motion for new trial contrary to Texas Rule of Civil Procedure 324(b)(2).  In re M.S.,115
S.W.3d 534, 547 (Tex. 2003).  Nor did he
argue or otherwise illustrate through his reply brief that the complaint was
preserved.

            Jordan proposed a cross-issue for our consideration.  However, its consideration was contingent on
our sustaining one or more of Davis’ issues. 
Because we overruled each of them, we need not consider the
cross-issue.  Accordingly, the judgment
of the trial court is affirmed.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice                        

             











[1]Though we refer to legislative
enactments as its basis, negligence per
se may also be founded upon an administrative regulation.  Continental Oil Co. v. Simpson, 604 S.W.2d 530, 534 (Tex. Civ. App.–Amarillo
1980, writ ref’d n.r.e.).





[2]We note that despite the
lack of reference to Rule 403, Davis did argue in his brief that in excluding
the evidence “the jury was left with a false impression” because an investigator
with the Agriculture Commission “was allowed to testify that her investigation
showed Jordan to ‘be in compliance.’” 
Whether this was an attempt to address that aspect of Rule 403
concerning evidence that may confuse or mislead the jury is unknown.  Nonetheless, we find the contention
misplaced.  When the investigator alluded
to Jordan being in compliance, she was referring to an inspection of his
records, not the allegation of improperly spraying Davis’ crop.  So, to the extent that the order, findings and
notice involved the spraying of the crop, we fail to see how their admission
was necessary to ameliorate any risk of confusion arising from the
investigator’s statement.